UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL PELZER and SALLY PEPPING,<br><br>    Plaintiffs,<br><br>    v.<br><br>THE LOCKFORMER COMPANY, a division of MET-COIL SYSTEMS CORP., a Delaware corp., MESTEK, INC., a Pennsylvania corp., and HONEYWELL INTERNATIONAL INC., a Delaware corp.,<br><br>    Defendants. | No. 01 C 6485<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Daniel Pelzer and Sally Pepping allege that due to the negligent conduct of the defendant corporations, they were exposed to the industrial solvent trichloroethylene ("TCE") as children and as a result suffered serious physical ailments and require medical monitoring. After several years of litigation, Plaintiffs reached a settlement with two of the three corporations named as defendants in the suit: The Lockformer Company ("Lockformer"), a division of Met-Coil Systems Corp. ("Met-Coil"), and Mestek, Inc. ("Mestek"). The only remaining Defendant, Honeywell International, Inc., ("Honeywell"), now seeks summary judgment on the ground that Plaintiffs have not disclosed and cannot offer competent medical opinion evidence establishing a causal connection between their illnesses and their alleged TCE exposure.

Both Plaintiffs claim that they were exposed to TCE emanating from Lockformer's property in Lisle, Illinois. Plaintiff Pelzer claims that he suffered from kidney disease and underwent a kidney transplant as a result of childhood exposure to TCE. Plaintiff Pepping is Pelzer's sister. She donated one of her kidneys to her brother and alleges pain, suffering, anguish

and expenses related to the kidney donation. She also claims to have suffered from infertility as a result of her childhood exposure to TCE. In addition to damages for these injuries, Plaintiffs seek damages for the costs of continued medical monitoring of their health.

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. A genuine issue of material fact exists when there is evidence on the basis of which a reasonable jury could find in the plaintiff's favor, allowing for all reasonable inferences drawn in a light most favorable to the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Rule 56(c) requires the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Despite Plaintiffs' vigorous efforts to ensure that Defendant Honeywell remained a party to the suit,[1] they failed to file a response to Honeywell's Motion for Summary Judgment or a Statement of Material Facts pursuant to Local Rule 56.1. The result of this failure is dire, as all of Defendant's facts are deemed admitted. *L.R. 56.1(b)(3)(B); see also Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) ("the penalty for failing to properly respond to a movant's 56.1(a)

---

[1] On September 22, 2004, I entered an order finding a good faith settlement between Plaintiffs and Defendants MetCoil and Mestek. Defendant Honeywell was not a party to the settlement. Nonetheless, on November 22, 2004, I entered an order dismissing the case with prejudice. Shortly thereafter, Plaintiffs moved to amend the November 22 dismissal order pursuant to Rule 60, arguing that the inclusion of Defendant Honeywell in the order was an inadvertent mistake. After hearing oral arguments, I agreed with Plaintiffs, granted their Rule 60 motion, and set a briefing schedule for Defendant Honeywell's Renewed Motion for Summary Judgment.

statement is usually summary judgment for the movant . . . because the movant's factual allegations are deemed admitted"). Plaintiffs' failure to respond is all the more troublesome given the state of the record. Plaintiffs withdrew their sole medical causation expert, Dr. Alan Hirsch, after Defendants objected to Dr. Hirsch's qualifications at the close of discovery.[2] Defendants argue that absent expert testimony, Plaintiffs have no admissible evidence that might demonstrate a causal link between their injuries and Defendant's alleged conduct.

A plaintiff in a negligence action bears the burden of proving duty, breach of duty, proximate causation and damages. *Brown v. Baker*, 672 N.E.2d 69, 71 (Ill. App. Ct. 1996). Generally, a plaintiff must establish proximate cause in a personal injury action through the admissible testimony of an expert witness. *Kane v. Motorola, Inc.*, 779 N.E.2d 302, 310 (Ill. App. Ct. 2002) ("plaintiffs . . . must come forward with scientific evidence regarding causation to preclude the entry of summary judgment"); *Wintz v. Northrop Corp.*, 110 F.3d 508, 515 (7th Cir. Ill. 1997) ("[u]nder Illinois law, to serve as the sole basis for a conclusion that an act was the proximate cause of the plaintiff's injury, an expert must be able to testify with a reasonable degree of medical certainty that proximate cause existed"). Summary judgment for the defendant is appropriate when a plaintiff cannot prove proximate cause. *Kane*, 779 N.E.2d at 310-11; *Wintz*, 110 F.3d at 515-16.

---

[2]Defendants moved to exclude Dr. Hirsch after discovery ended. Plaintiffs did not respond in writing, but withdrew Dr. Hirsch as an expert witness at an October, 2003 hearing. In November, Plaintiffs sought leave to supplement their Rule 26(a)(2) disclosures in order to add another expert. I granted the motion, but almost immediately vacated the ruling on Defendant Mestek's motion. Thereafter, expert discovery was stayed while the parties pursued settlement. Since Defendant Honeywell renewed its motion for summary judgment, Plaintiffs have not sought leave to disclose an expert witness.

Plaintiff Pelzer claims that his kidney disease was caused by TCE exposure, but offers no evidence to that effect. Without Dr. Hirsch's testimony, Pelzer's sole medical testimony is that of his treating physicians, Drs. Julka and Jensik. Dr. Julka is board-certified in internal medicine and nephrology, and first saw Pelzer in 1990 after Pelzer was diagnosed with kidney disease. Dr. Julka, who continues to treat Pelzer, diagnosed Pelzer's condition as membranous nephropathy. Dr. Julka believes that Pelzer's condition is idiopathic: that is, the cause of his membranous nephropathy is unknown. Therefore, Dr. Julka offers no opinion concerning the cause of Pelzer's kidney disease. Dr. Jensik performed Pelzer's kidney transplant in 1993. He also fails to offer an opinion on the cause of Pelzer's condition, nor is he aware of any literature associating Pelzer's condition with TCE exposure. In sum, these two physicians neither formed nor disclosed opinions establishing a causal connection between Pelzer's kidney disease and TCE exposure. There is no other evidence in the record before me that raises a genuine issue of material fact with respect to the proximate cause of Pelzer's condition.

In *Porter v. Whitehall Labs., Inc.*, 9 F.3d 607 (7th Cir. 1993), the plaintiff administratrix filed suit against drug manufacturers, alleging that the defendants' drugs had caused the decedent's renal failure and death. The defendants successfully moved for summary judgment after the district court excluded the plaintiff's expert witness pursuant to *Daubert*. Affirming the district court's decision, the Court of Appeals of the Seventh Circuit held that the district court correctly concluded that "expert testimony is necessary to determine the cause of Mr. Porter's renal failure." *Id*. at 612 (observing first that under Indiana law, a plaintiff "must prove every element of a prima facie case, including causation"). As with the plaintiff in *Porter*, Pelzer's failure to offer expert testimony establishing Defendants' conduct as the proximate cause of his kidney disease warrants summary judgment of his claim.

4

Plaintiff Pepping also fails to offer any expert, medical testimony in support of her claim that her infertility is the result of her exposure to TCE. Dr. Martin Gallo is an obstetrician/gynecologist who has treated Pepping since 1992. His deposition testimony offers no opinion regarding the relationship between Pepping's infertility and her alleged exposure to TCE. Dr. Gallo referred Pepping to Dr. John Rinehart, an infertility specialist, after Pepping informed him that she was having difficulty conceiving.[3] Rather than raising genuine issues of material fact in support of Pepping's claim, Dr. Rinehart's testimony actually strengthens Defendant's position. Dr. Rinehart, who diagnosed Pepping and successfully treated her infertility, offered the opinion that no reasonably well-qualified reproductive endocrinologist could come to the conclusion that Pepping's infertility was caused by exposure to tricloroethylene. Like her brother, Pepping cannot withstand Defendant's Motion for Summary Judgment on her claim of infertility due to TCE exposure because she fails to present competent, admissible testimony regarding the proximate cause of her injury. Summary judgment on her claim is appropriate, and granted.

Defendant also asserts that Plaintiffs' lack of expert, medical testimony requires summary judgment on their claim for medical monitoring. Illinois courts and federal courts interpreting Illinois law have grappled with the medical monitoring remedy and have produced less than clear results. *See Guillory v. Am. Tobacco Co.*, 97 C 8641, 2001 U.S. Dist. LEXIS 3353, at *20-22 n.2 (N.D. Ill. Mar. 19, 2001) (reviewing cases and concluding that "[a]lthough the viability of a cause

---

[3]Dr. Rinehart holds a doctorate in physiology and a medical degree. He completed an internship, residency and chief residency at Johns Hopkins Medical School and subsequently completed a fellowship in reproductive endocrinology at Harvard University Medical School. Dr. Rinehart is board certified in obstetrics, gynecology and reproductive endocrinology. In private practice since 1986, Dr. Rinehart holds an academic appointment at Northwestern University Medical School, and is the Division Director of Reproductive Endocrinology at St. Francis Hospital in Evanston and at Evanston Northwestern Health Care.

of action for medical monitoring has not yet been addressed in many jurisdictions, including this one, courts that have recognized the claim have concluded that a plaintiff may recover the cost of diagnostic medical evaluation proved to be proximately caused by the defendant's wrongdoing"). In *Carey v. Kerr-McGee Chem. Corp.*, 60 F. Supp.2d 800, 813 (N.D. Ill. Aug. 18, 1999), Judge Gettleman denied the defendants' motion for summary judgment of the minor plaintiffs' claim for medical monitoring, observing that plaintiffs' experts offered opinion evidence that raised a genuine issue of material fact with respect to the need for medical monitoring.

While it is not entirely clear that expert testimony is the only possible source of evidence for a medical monitoring claim, there are simply no facts in the record to support Plaintiffs' claim that they require continued medical monitoring.[4] Moreover, given that Plaintiffs cannot prove that Defendants' actions proximately caused their injuries, they cannot establish Defendants' liability for the costs of medical monitoring. *See Guillory*, 2001 U.S. Dist. LEXIS 3353 at *21. Summary judgment is granted on this claim, as well.

Finally, Pepping's claim for damages as a result of her kidney donation also merits summary judgment. The facts submitted by Defendant establish that: prior to the transplant surgery, Pepping underwent tests to determine if her kidney would be a match for her brother; she voluntarily donated her kidney to her brother in 1993 and remained in the hospital for three or four days after the transplant; post-surgery, she suffered from a reaction to the anesthesia and was prescribed morphine; she also suffered from pain and difficulty walking for several weeks after the transplant; doctors instructed her not to engage in any contact sports after the donation; and

---

[4]At most, the facts offered by Defendant establish that Pelzer continues to be treated by Dr. Julka and that Pepping is still a patient of Dr. Gallo. The record does not establish whether Pepping continues to seek treatment from Dr. Rinehart.

she has not suffered any complications since donating her kidney. Illinois has not recognized a cause of action for an organ donor against a party whose alleged negligent acts caused an organ donee to need and undergo a transplant. Moreover, in those courts in which this issue has been raised, a plaintiff's decision to voluntarily donate an organ typically provides a basis for dismissal of the claim.[5] I see no reason to hold otherwise, particularly in light of Pepping's failure to pursue her claim.

For these reasons, Defendant Honeywell's Motion for Summary Judgment as to all of Plaintiffs' claims is GRANTED.[6]

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: July 6, 2005

---

[5] *See*, e.g., *Dabdoub v. Ochsner Clinic*, 802 So. 2d 651, 653-54 (La. App. 2000) (collecting cases).

[6] It is true that two Defendants settled with Plaintiffs on the basis of the same allegations made here. Some may believe that because the other Defendants settled there must be at least some evidence to prove the validity of Plaintiffs' claims. But this is not so. Defendants routinely settle suits that they might otherwise win and they do so for a variety of reasons. Moreover, even if a court could draw an inference from the actions of a settling defendant that there was a good basis in fact for a plaintiff's claim, the law has turned its face from such inferences by requiring that the case against each defendant be decided on its own merits. Cases such as this one are really three separate lawsuits, and Plaintiffs must prove their case against each Defendant individually.